## APPEAL OF CHARLES P. HEWES.

Docket No. 3859. Submitted July 27, 1925. Decided November 9, 1925.

> The value of the taxpayer's interest in a parcel of land as of March 1, 1913, determined.

*Newell W. Ellison, Esq.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income tax for 1918 in the amount of $4,691.33.

The only question involved is the amount of profit realized by the taxpayer upon the sale of real estate in 1918.

### FINDINGS OF FACT.

The taxpayer is a resident of Erie, Pa. In 1896 the taxpayer received a deed from one Greene covering a parcel of unimproved land 40 by 330 feet, running between Twelfth and Thirteenth Streets in the business section of Erie, and delivered back to Greene a mortgage for $800. No cash was paid at that time, nor was the deed then recorded. In 1903 the taxpayer expressed to Greene the desire to be relieved of the mortgage obligation and stated that he was willing to deed the land back to Greene. The mortgage was satisfied but no reconveyance of the land was made.

The land in question had been acquired by Greene, who was then president of the Barber Asphalt Paving Co., through a sheriff's sale for a municipal lien arising from work done in repairing the street adjoining the land in question.

The land was conveyed by Greene to the taxpayer, an attorney at law, for the purpose of procuring judicial determination of the title to the land. Abutting land owners claimed that the land was a public alley by reason of adverse user or dedication to the public.

The taxpayer was unsuccessful in an action of trespass brought shortly after the transfer to him. The failure in that suit was the reason for his offer to reconvey.

On June 8, 1912, the taxpayer wrote the Barber Asphalt Paving Co. as follows:

JUNE 8, 1912.

GENTLEMEN:

Replying to your letter of the 4th instant in relation to the alley, I would state that the whole matter is so high in the air I cannot anticipate landing. We have one chance in a hundred of winning in an ejectment for the premises and it ought to be brought with an idea of making some kind of a settlement. I think the idea of the parties is to pay about one thousand dollars to me for a Quit Claim Deed, and before I could discuss a settlement I ought to know just what you expect. In my letter to Gen. Greene I asked him to agree to accept Five Hundred Dollars, as that amount would be in excess of the face of the lien and the only reduction being upon interest.

If your company will agree to accept Five Hundred Dollars, I will be in shape to deal with the parties. On the other hand, I am adverse to a suit against the parties under an indefinite agreement with your company.

To be frank with you, I don't have the least idea what I may recover either by suit or settlement in anything, which accounts for my asking you to fix your share, if anything is recovered, as low as possible.

Very truly,

CHAS. P. HEWES.

Under date of January 12, 1915, the Barber Asphalt Co. wrote the taxpayer as follows:

We thank you for your letter of the 9th instant and note with regret that you are not very hopeful of the outcome of your litigation. Our position in the matter is as stated in our Vice President's letter to you of June 11, 1912, to wit: that we will accept $500 as our share in any settlement, but we did not then agree nor do we now feel that under any circumstances should we obligate ourselves to share any expense of litigation, regardless of the outcome of same.

In July, 1912, the taxpayer brought an action of ejectment in the Court of Common Pleas of Erie County against the abutting property owners who were using the land for access to their property, and joined the City of Erie as a party defendant. On June 1, 1915, judgment was rendered for the taxpayer. On June 2, 1915, the taxpayer paid the Barber Asphalt Co. $500 " in full settlement and payment of purchase money due * * * on conveyance of property * * * by Quit Claim Deed dated December 28, 1896 * * *." The deed was thereafter recorded.

The judgment of the Court of Common Pleas was affirmed by the Supreme Court of Pennsylvania in May, 1916, and the taxpayer then brought an action of trespass against certain of the abutting owners and recovered a verdict for mesne profits from July, 1912, to 1915, the date of the judgment in the ejectment action, in the amount of $4,202.28, which amount was paid, with interest, to the taxpayer in 1918 and included by him as income in his tax return for that year.

Prior to 1916 and subsequent to 1913, the taxpayer offered to convey the land to the abutting owners for $6,500.

Subsequent to May, 1916, the abutting owners filed a bill in equity for an injunction to restrain the taxpayer from interfering with their use of the land as a public way. The bill was dismissed and the judgment was affirmed by the Supreme Court of Pennsylvania in February, 1917.

The total cost of the land to the taxpayer was $5,750, consisting of the purchase price of $500 and the attorney fees of $5,250.

The land was sold by the taxpayer in 1918 for $33,230. The taxpayer made his return upon a cash basis. The Commissioner computed the profit on the sale of the land on the basis of the fair market value of the property on March 1, 1913, being $6,500, and determined a deficiency in tax for 1918 of $4,691.33, from which determination the taxpayer duly appealed.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 7 days' notice, under Rule 50.

OPINION.

MARQUETTE: The question presented in this appeal is the fair market value of the taxpayer's interest in the real estate on March 1, 1913. Section 202(a) of the Revenue Act of 1918 provides:

That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof;  *  *  *

That the title to the property involved herein was vested in the taxpayer prior to March 1, 1913, is settled by the decisions of the Supreme Court of Pennsylvania in *Hewes* v. *Miller*, 254 Pa. St. 57; 98 Atl. 776; and *Stearns Co.* v. *Hewes*, 256 Pa. St. 577; 100 Atl. 1054.

The Commissioner has considered the value as of March 1, 1913, as equal to the amount at which the taxpayer offered to sell the property to the litigant abutting owners some time around 1916, to wit, $6,500. The taxpayer, on the other hand, brings in expert testimony to prove a value of about $30,000 as of March 1, 1913. The Barber Asphalt Paving Co. considered the property of such little value in June, 1915, that it accepted $500 in full payment and deemed the chance of final success in the litigation so very remote that it refused absolutely to bear any of the expense.

Obviously, the land had a value much in excess of $500, if all persons who claimed title, including the City of Erie, had been willing to join in a conveyance to a willing buyer. Sales of adjacent land then would have clearly justified the value of $30,000 expressed by the several experts. But the fact that adjoining land had a value is not conclusive in determining the value of the land in question. If the conditions existing as to one parcel of land are the same as those relating to an adjacent parcel, proof of value evidenced by sale as to the former may assist in the determination of the value of the latter, but it does not follow that, because one parcel is valued at a certain price per front foot or per square foot, an adjoining parcel, not similarly situated, has the same or a similar value.

The question is not what the land herein was worth in 1913, in the light of subsequent events, but what was its fair market value on March 1, 1913, under the then known conditions as between a willing buyer and a willing seller? No offers to purchase the land were made at or about that time. The taxpayer himself offered to sell it in 1916 or thereabouts for $6,500. Apparently there was no willing purchaser at that price. The expression of value nearest to March 1, 1913, was contained in the letter of June 8, 1912, written

by the taxpayer to the Barber Asphalt Paving Co. He therein states:

The whole matter is so high in the air I cannot anticipate landing. We have one chance in a hundred of winning in an ejectment for the premises and it ought to be brought with an idea of making some kind of a settlement. I think the idea of the parties is to pay about one thousand dollars to me for a Quit Claim Deed, and before I could discuss a settlement I ought to know just what you expect. * * * If your company will agree to accept Five Hundred Dollars, I will be in shape to deal with the parties. On the other hand, I am adverse to a suit against the parties under an indefinite agreement with your company. To be frank with you, I don't have the least idea what I may recover either by suit or settlement in anything, which accounts for my asking you to fix your share, if anything is recovered, as low as possible.

That letter shows no opinion of the taxpayer at that time that the property had a real value. His only hope was to force a settlement out of the abutting owners through an ejectment proceeding, and to split "fifty-fifty" with the Barber Asphalt Paving Co. in the "one hundred to one shot."

The reply of that company was not produced in evidence, but under date of January 12, 1915 (almost two years after March 1, 1913), we find them stating:

Our position in the matter is as stated in our Vice President's letter to you of June 11, 1912, to wit: that we will accept $500 as our share in any settlement, but we did not then agree nor do we now feel that under any circumstances should we obligate ourselves to share any expense of litigation, regardless of the outcome of same.

It is not conceivable that, if the taxpayer himself believed the property had a value of $30,000 in 1913, he would have done otherwise than remove the Barber Asphalt Paving Co. from the situation by paying them the $500 forthwith. It is not conceivable that the Barber Asphalt Paving Co. would have limited itself to the possible receipt of $500 from property which it believed to be worth $30,000, since it was given a full opportunity to trade in the deal. It is not conceivable that the abutting owners would have refused to pay $6,500 for property which was worth $30,000, or that the taxpayer would have made the offer.

We can reach no conclusion, upon all the evidence before us, other than that the fair market value of the property on March 1, 1913, was no greater than the $500 which the taxpayer was obligated to pay therefor. But in determining the gain realized upon the sale in 1918, consideration should be given to an additional capital expenditure of $5,250 attorney's fees. The resulting total cost (since no greater March 1, 1913, fair market value has been proved) should be deducted from the $33,230 received in 1918, and the deficiency should be computed upon that amount as gain realized in 1918.

The amount of $4,202.28 received by the taxpayer in 1918 as mesne profits was properly included in income of that year.